# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:11-CR-42

UNITED STATES OF AMERICA                                                                PLAINTIFF

V.

EDWIN BAUTISTA                                                                          DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendant Edwin Bautista's motion to suppress (DN 37). The government has responded (DN 45). Defendant did not reply within the time allowed by the Rules. This matter is now ripe for adjudication. For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

On September 19, 2010, Detective George Workman of the Pennyrile Narcotics Task Force and other law enforcement officers executed a search warrant at Bautista's home in Mayfield, Kentucky. The search warrant was issued based on an affidavit signed by Detective Workman, which stated the following articulation of probable cause:

> Affiant has been an officer in the aforementioned agency for a period of 4 years and the information and observations contained herein were received and made in his capacity as an officer thereof.
>
> I stopped Daniel Copeland today. I recovered approximately ½ ounce of Methamphetamine which he hand [sic] hidden near him. He informed me that he purchased the methamphetamine from Mr. Edwin Bautista. He advised that he goes to Mr. Bautista's residence sometimes twice per week and purchases between 1 ounce and 2 ounces of this substance. He advised that he has been doing this for approximately 1.5 years. He said he was last at this residence 72 hours prior to speaking with me. He submitted a written statement to this effect. He said Mr. Bautista either keeps the substance on his person or in his bedroom next to his bed.

> Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of said court.

DN 45-1 at p. 4. On September 17, 2010, Graves County Chief District Judge Deborah Crooks signed a search warrant for the premises located at Lot # 78 of the Country Living Mobile Home Park in Mayfield, Kentucky ("Lot #78").

During the search, law enforcement officers discovered and seized evidence of drug trafficking. Bautista was found in the home, but no controlled substances were found on his person. The officers arrested Bautista and took him to the Graves County Jail. After Detective Workman read Bautista his Miranda rights, he interviewed Bautista. Bautista gave incriminating statements. Bautista now moves this Court to suppress all evidence stemming from the search of his house, on the grounds that the affidavit in support of the search warrant did not set forth probable cause.

## DISCUSSION

The Fourth Amendment was established to protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV*; see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "In order to establish probable cause . . . there must . . . be a nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) (internal quotations omitted). In other words, "[t]o justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *Carpenter*, 360 F.3d at 594. The issuing

judge's findings of probable cause should not be set aside unless arbitrarily made. *United States v. Brown*, 147 F.3d 477, 484 (6th Cir. 1998).

Here, Bautista argues that the affidavit in support of the search warrant did not establish probable cause because the affidavit did not show a nexus between the place to be searched and the evidence sought. Specifically, Bautista argues that the affidavit does not indicate at any point that Lot #78 was in fact Bautista's residence or that the drug sales described by Copeland occurred at Lot #78. As a result, Bautista argues that all evidence stemming from the search should be excluded.

In *Laughton*, the affidavit in support of the search warrant stated that an informant had made two controlled purchases that were observed by the affiant, but it did not state where the purchases took place. *Id*. at 747. The affidavit also stated as follows:

> Through the course of this investigation your Affiant has learned that James Howard Laughton will keep controlled substances/drugs in the crotch area of his pants and in his pants pockets. Further that there are various stashes around the home.
>
> This CI is believed to be credible and reliable by the Affiant due to the fact that the CI has provided reliable information in the past which was corroborated by Affiant. CI has provided information that there is more controlled substances located at or in the residence or located on the person of James Howard Laughton due to the fact that he has observed these controlled substances.

*Id.* The Sixth Circuit found that the warrant failed to make any connection between the residence to be searched and the facts of criminal activity set out in the affidavit, failed to indicate any connection between the defendant and the address, and failed to indicate any connection between the defendant and any criminal activity that took place at the residence. *Id*. Therefore, the Sixth Circuit agreed with the district court's determination that the affidavit did not provide a substantial basis for concluding there was probable cause to issue the warrant. *Id*. at 748.

To establish probable cause, the affidavit must have indicated why evidence of illegal activity would be found at the particular place to be search–Lot #78. The affidavit does not do so. Like in *Laughton*, the affidavit in this case neither indicated that Lot # 78 was Bautista's residence nor indicated that the drug sales described by Copeland occurred at Lot # 78. Instead, the affidavit states only that the drug sales occurred at Bautista's residence, and then lists Lot # 78 as the place to be searched. The government contends that, given all the circumstances of Copeland's information and the detailed description of the place to be searched, the inference can be made Lot #78 is Bautista's residence. However, the government's argument is to no avail because the affidavit contains no evidence from which such an inference could be made. The single paragraph setting forth the factual details fails to even mention Lot #78. Accordingly, probable cause to search the residence located at Lot #78 was not established because the affidavit submitted to obtain the warrant did not explain the significance or the relevance of searching the home located at this particular location.[1] *See United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988) (finding no probable cause where the affidavit failed to provide any nexus between the residence and the illegal activity).

The only question remaining then is whether the *United States v. Leon*, 468 U.S. 897 (1984) good faith exception to the exclusionary rule applies to save the search. In *Leon*, the Supreme Court determined that the exclusionary rule should not bar the government's introduction of evidence obtained by law enforcement officers acting in objectively reasonable reliance on a subsequently invalidated search warrant. *Leon*, 468 U.S. at 918-21. The Supreme

---

[1] In *Laughton*, Judge Gilman wrote in dissent that "[t]o not link the affidavit's reference to 'home' and 'the residence' to [the defendant] and the stated address strikes me as an unwarranted hypertechnicality, especially when evaluating the officer's good-faith belief for Leon purposes." 409 F.3d at 753 (Gilman, J., Dissenting). Although the Court may be inclined to agree with Judge Gilman's dissent, it must follow the majority opinion.

4

Court in *Leon* identified four situations in which an officer's reliance on a subsequently invalidated warrant *could not* be considered to be objectively reasonable: (1) when the warrant is issued on the basis of an affidavit that the affiant knows contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid. *Id*. at 914-23. Here, Bautista argues that the good faith exception does not apply because the warrant in this case was so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable.

"[A] determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Laughton*, 409 F.3d at 751. Thus, "[w]hether an objectively reasonable officer would have recognized that an affidavit was so lacking in indicia of probable cause as to preclude good faith reliance on the warrant's issuance can be measured only by what is in that affidavit." *Id.* at 751–52. Accordingly, in determining whether the good-faith exception applies, the Court cannot consider information that the law enforcement officers may have learned from Copeland or other sources that does not appear in the affidavit.[2]

In *Laughton* the Sixth Circuit reviewed all of its cases involving questions about the nexus between criminal activity and places, where the court found that probable cause did not exist, but where the good faith exception was applied. *Id*. at 749. The Court noted that, for the

---

[2] The Court recognizes that this holding in *Laughton* was modified by the panel in *United States v. Frazier,* 423 F.3d 526 (6th Cir.2005). In *Frazier*, the Sixth Circuit concluded that "information that was known to the officer and revealed to the issuing magistrate" but not necessarily included within the affidavit could be considered by a court in making a determination under *Leon. Id.* at 535–36. Here, however, the government has presented no information other than what is contained in the affidavit itself was presented to the magistrate. Accordingly, the Court will only consider the information that appears in the affidavit.

5

good faith exception to apply, there must be "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id*. The court in *Laughton* found that the good faith exception did not apply. There, the affidavit merely "listed an address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton." *Id*. at 751. Thus, "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable." *Id*.

Likewise, here, the affidavit simply lists an address of the premises to be searched, and states Copeland's allegations regarding the fact that he regularly purchased methamphetamine from Bautista at his home. There is not even a "modicum of evidence" linking the criminal activity described by Copeland and Lot #78. *Cf. United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (applying good faith exception where affidavit for search warrant neglected to indicate why the affiant believed the defendant had any connection to the residence, but did state that the rooms in the residence were available to the defendant). Importantly, the affidavit did not state any evidence linking Bautista to Lot #78 and did not even state that Bautista resided at Lot #78. No reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable. Although the Court does not find that the law enforcement officers acted in bad faith, it nonetheless must conclude that the *Leon* good faith exception does not apply.

## CONCLUSION

For the foregoing reasons, the Court finds that the search warrant executed in this case was not supported by probable cause, and that the *Leon* good faith exception does not apply to save the search from the exclusionary rule. Accordingly, IT IS HEREBY ORDERED that

Defendant Bautista's motion to suppress (DN 37) is GRANTED. All evidence stemming from the search of the premises located at Country Living Mobile Home Park Lot # 78, Mayfield, Kentucky, 42066 is excluded.